**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AGUEDA R. ROBBIE and DIANE LARSEN, Trustees of THE AGUEDA R. ROBBIE MARITAL TRUST U/A/D 03/18/2003,<br><br>         Plaintiffs,<br><br>vs.<br><br>BLANCO RIVER LLC, an Arizona limited liability company, CHRISTOPHER GREEN,<br><br>         Defendants. | 3:08-cv-00220-HDM-RAM<br><br>FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION |

This case was tried before the court without a jury upon stipulation of the parties. The court enters its Findings of Fact, Conclusions of Law and Decision as follows:

**FINDINGS OF FACT**

This dispute centers around language contained in a promissory note dated April 4, 2006. Plaintiff, Agueda R. Robbie, also known as Eda Robbie, resides in Reno, Nevada and is the Trustee of the Agueda R. Robbie Marital Trust U/A/D dated March 18, 2003.

1

The defendant Blanco River LLC (hereinafter "Blanco River") is an Arizona limited liability company. Defendant Christopher Green was the former manager and a member in Blanco River. The business transaction, the subject of this dispute involves a Blanco River Walk development project in San Marcos, Texas. Investors in the project included family and friends of Christopher Green, Bill Tao, Eda Robbie and Alison Ruday, the step-daughter of Eda Robbie. During late March or early April of 2006, a company named Blanco River was formed to takeover the Blanco River Walk project. The purchase price for the property was 40 million. The seller was James Galloway.

Initially, the various individuals described above offered a 20% interest in the project in exchange for a $1,000,000.00 investment.

Because of the limited time frame for acquisition, the parties needed to raise monies immediately and secure a $250,000.00 down payment on the property. A $250,000.00 non-refundable deposit had to paid to the seller in order to proceed with the purchase.

Eda Robbie agreed to invest the $250,000.00 from her marital trust in exchange for a 15% equity interest in Blanco River. The parties expected that the $250,000.00 would be used as the down payment or deposit on the land for the Blanco River Walk project.

Christopher Green, the principal shareholder in Blanco River, agreed to give the Agueda R. Robbie Marital Trust a 15% equity interest in the company in exchange for the $250,000.00 investment.

In early April 2006, a draft promissory note for the $250,000.00 payment by the Agueda R. Robbie Marital Trust was circulated among Burt Heimlich, Christopher Green, and their attorney, Jared McHatton, Alison Ruday, Eda Robbie and Bill Tao.

The discussions resulted in Christopher Green and Burt Heimlich entering into an agreement to provide the Agueda R. Robbie Marital Trust with an unsecured convertible note that could be exchanged for a 15% ownership equity interest in Blanco River after the operating agreement for Blanco River had been completed and other investors had invested money and become members of Blanco River.

A dispute arose between Alison Ruday and Eda Robbie on the appropriate means for using the Agueda R. Robbie Marital Trust for investing the $250,000.00. The original proposal was that the $250,000.00 be divided as follows: $150,000.00 to Eda Robbie and $100,000.00 to Alison Ruday. Accordingly, a note was prepared by Burt Heimlich reflecting two notes, one payable to Eda Robbie in the amount of $150,000.00 and the other payable to Alison Ruday in the amount of $100,000.00.

Ultimately, Eda Robbie persuaded the other investors that there was to be only one promissory note made payable to the Agueda R. Robbie Marital Trust in the amount of $250,000.00. On April 4, 2006, Bill Tao sent an email to Burt Heimlich indicating there should be one $250,000.00 note payable to the Agueda R. Robbie Marital Trust. He also asked for clarification of the final paragraph of the draft note that the payee would be "getting both $250,000.00 at closing plus a total representation of 15% equity interest in the project's profit." (Exhibit 25). Tao, on behalf of Eda Robbie, was seeking to clarify that in exchange for the note either being converted to an equity interest in the company or assigned to the company in exchange for an equity interest that the plaintiff would acquire a 15% interest in the project's profit and would also receive the balance of the note at the close of escrow.

The final version of the relevant language in the note is the following:

> "Payee may assign the outstanding balance due payee on this note including any accrued interest not then delinquent into a fifteen percent (15%) pari passu equity interest in Maker or its successors on or before the closing date of the acquisition of Vista del Blanco, Ltd.,, a Texas limited partnership, by Maker or any refinancing, sale or assignment of Maker before June 15, 2006.
>
> Based on the assignment of the note and at such closing, refinancing, sale or assignment of the Maker, the Payee will be repaid the outstanding balance due Payee on the note including any accrued interest not then delinquent.  In addition, the Payee will be entitled to a fifteen percent (15%) pari pass interest in Blanco River, LLC." (Exhibit 1).

On or about April 5, 2006, plaintiffs Eda Robbie and Diane Larsen as Trustees of the Agueda R. Robbie Marital Trust and defendant Christopher Green and Burt Heimlich signed the $250,000.00 promissory note and Eda Robbie wired the $250,000.00 to a law firm in Arizona to make the deposit and secure the purchase of the land.

Christopher Green and Burt Heimlich personally guaranteed the payment of the note.  The evidence is clear that Eda Robbie expected, by virtue of her investment, to obtain a 15% ownership interest in Blanco River and in addition, to recover her initial investment of $250,000.00 in the same manner as all of the other investors from the returns of the company.

Eda Robbie articulates this position in an email she sent to Alison Ruday on April 5, 2006 in which she states the following:

> "To recap, I committed to Chris that we will take the position of the 1st 250K, which will provide us with $9MM (15%) of the projected profit of the $60MM) which will be distributed on or before the project completion in 30 months per my understanding, based on the operating agreement draft.

4

> In reviewing the events of the last 72 hours I want to share with you on how we arrived to a now potentially very healthy return for all of us. When Chris called Bill on Friday to discuss the project, he was asked to assist him in raising the $250K so the contract can be re-instated to <u>save the deal</u>.
>
> I was considering to risk between $100-150K. The initial offer from Chris for the Pioneer Fund was 5% for $250K (based on the 20% for the original $1MM), which he was discussing with Bill.
>
> After numerous discussions between Chris and Bill a kicker percentage for the Pioneer Fund was developed as suggested by him, from 2.5, 5, 10% and why finally, why not 15%?
>
> This is the reason we have the 15% return on our Pioneer Fund investment. It has also galvanized my decision to take the whole 1st position so I can also give something back to my side of the family who can really use some financial assistance, hence I sent you this morning's eml." (Exhibit 8).

It was the clear intent of Eda Robbie, as Trustee, to invest the $250,000.00 to secure a 15% ownership equity position with the company and not to simply act as an unsecured lender to a new LLC on a relatively speculative venture in Texas.

On April 10, 2006, the purchase agreement under the terms of which Blanco River was to acquire the underlying land and use the $250,000.00 from plaintiff to make the down payment was executed by Christopher Green and Burt Heimlich.

In order to move forward with the acquisition of the property, an operating agreement was prepared by Blanco River and was sent to Eda Robbie for her signature on April 20, 2006. The original version of the operating agreement provided for a 9.75% equity interest to Eda Robbie and a 5.25% equity interest to Alison Ruday. It also listed Eda Robbie as one of the three managers of Blanco River in addition to Chris Green and Burt Heimlich. In an email dated May 22, 2006, Eda Robbie objected to the percentages in the operating agreement and

5

advised that she was entitled to receive a 15% ownership interest for the Agueda R. Robbie Marital Trust and the operating agreement she received improperly divided the ownership interest between Eda Robbie and Alison Ruday.

On May 22, 2006, Eda Robbie sent a email to Jared McHatton, who was the attorney who had drafted the operating agreement for Blanco River and stated as follows:

> "As the legal counsel for Blanco River, LLC, it is your responsibility not to disregard my request being one of the managers and the Trustee of the Marital Trust which loaned $250,000 to Blanco River, LLC through your firm, which was then used to secure the Purchase Agreement between Blanco River LLC and Vista del Blanco Ltd. This loan was further secured by a Promissory Note, which will be sent to you by legal counsel as soon as you send me the current Operation Agreement for review." (Exhibit 14).

This statement clearly reflects Eda Robbie's intent that once she was satisfied with the operating agreement and the percentages set forth in the operating agreement, if they were consistent with the terms of the promissory note, that she was going to send the note to Blanco River in exchange for her equity interest in the company.

Thereafter on June 15, 2006, Eda Robbie received the new version of Blanco River's operating agreement from Christopher Green. In a letter dated June 13, 2006, to Christopher Green, Eda Robbie stated the following:

> "Dear Mr. Green:
>
> This is to notify you, and the Principals and Managers of Blanco River, LLC, that I am acknowledging that the enclosed corrected Blanco River LLC Operating Agreement which comprised of sixty one (61) pages, is the official and final Operating Agreement for Blanco River, LLC. I have properly corrected and executed the appropriate pages as described below on item#1.
>
> 2. Signatory Pages (1-4 as EML enclosure but with page number 55-58 at the bottom). See corrected page 3/4 or

6

        page 57 with the correct Member representation; executed accordingly on June 13, 2006.

        3. Copies of the Letters from Scarpello and Huss, A Professional Corporation from Mr. A. Christopher Zimmerman, my Trusts Attorney, requesting that Exhibit A of the Blanco River, LLC Operating Agreement reflect the proper assignment of the 15% pari passu interest in the Blanco River, LLC to the FBO The Agueda R. Robbie Marital Trust, U/A/D 03/18/2003, to implement its provisions.

        4. Promissory Note for $250K dated April 4, 2006, held by FBO The Agueda R. Robbie Marital Trust U/A/D 03/18/2003.

        Respectfully,

        Agueda R. Robbie
        Trustee, FBO the Agueda R. Robbie Marital Trust U/A/D 03/18/2003" (Exhibit 15).

At this time, Eda Robbie was acknowledging the assignment provision of the promissory note and returned the original note along with the operating agreement. In doing so, however, she reflected that the operating agreement contained the wrong percentage and should be corrected from the 10.437% equity interest to the proper 15% equity interest reflected under the terms of the promissory note. Nevertheless, she executed the operating agreement and surrendered the note to ensure she would receive an equity interest in Blanco River before the close of escrow.

Almost all of the remaining investors signed the June 2006 version of the operating agreement and returned it shortly before the June 15th anticipated date for closing the escrow. Under the provisions of the operating agreement that Eda Robbie and the other investors signed and returned there was a provision for return of the investments plus interest at the close of escrow when sufficient funds were on deposit to repay the investors. Specifically the operating agreement contained the following provision under Paragraph 6.1(a):

>    (a) <u>Return of Initial Capital and Accrued Interest</u>.
>    The initial Capital Contributions and accrued interest,
>    at a rate of 12% per annum from the time of contribution
>    to that of distribution, of those Members who elected to
>    contribute initial capital prior to the closing of the
>    acquisition of Vista del Blanco Ltd and the closing of
>    the acquisition and development loan to be obtained in
>    connection with such acquisition shall be distributed to
>    such Members from the proceeds of the acquisition and
>    development loan at such closing. (Exhibits 16, 51, 52 &
>    54).

The transaction did not close on June 15, 2006 and while there was an extension granted to July 15, 2006 and a second extension to July 28, 2006, the escrow never did close.

At no time prior to the failed property purchase did the defendant Christopher Green or Blanco River respond to Eda Robbie's last communication on June 13, 2006 in which she requested that the operating agreement be modified to properly reflect the 15% equity interest in the company that she was entitled to receive under the express terms of the promissory note. In fact, the operating agreement which had been sent to her and which she returned with the modifications expressed in the June 13, 2006 letter provided for a 10.437% equity interest.

Subsequent to the failed property purchase, Eda Robbie executed a K-1 tax form and sought a $250,000.00 deduction from the income on her taxes.

**CONCLUSIONS OF LAW**

The first claim Eda Robbie has against the defendants Blanco River and Christopher Green is for breach of contract. The breach of contract claim centers on the promissory note entered into between Eda Robbie as Trustee of the Agueda R. Robbie Marital Trust and Blanco River. The promissory note was personally guaranteed by

Christopher Green and Burt M. Heimlich.  Burt Heimlich is deceased and the time expired to bring an action against the estate of Burt Heimlich prior to Eda Robbie pursuing her claims against the defendants in this action. Accordingly, Burt Heimlich is not a named defendant in this lawsuit.

The legal issue for determination by the court is whether Eda Robbie assigned all or any portion of her promissory note to Blanco River in exchange for an equity interest in Blanco River.  And, if she did so, is she nevertheless entitled to recover against Blanco River and Christopher Green as an unsecured creditor of all or a portion of the note.  The note states:

> "Payee may assign the outstanding balance due payee on this note including any accrued interest not then delinquent into a fifteen percent (15%) pari passu equity interest in Maker or its successors on or before the closing date of the acquisition of Vista del Blanco, Ltd.,, a Texas limited partnership, by Maker or any refinancing, sale or assignment of Maker before June 15, 2006.
>
> Based on the assignment of the note and at such closing, refinancing, sale or assignment of the Maker, the Payee will be repaid the outstanding balance due Payee on the note including any accrued interest not then delinquent. In addition, the Payee will be entitled to a fifteen percent (15%) pari pass interest in Blanco River, LLC." (Exhibit 1).

Eda Robbie contends that the Agueda R. Robbie Marital Trust is entitled to be repaid the $250,000.00 under the promissory note plus interest by Blanco River, which amounts were guaranteed by Christopher Green, and that in addition, the Agueda R. Robbie Marital Trust is entitled to a 15% equity interest in Blanco River, whether or not the plaintiff ever assigned the outstanding balance due on the agreement or converted the note into an equitable ownership interest in Blanco River.

1    It is the defendant's contention that under the terms of the
2 promissory note, the Agueda R. Robbie Marital Trust was entitled
3 initially to be repaid the $250,000.00 plus interest in one year by
4 Blanco River.  That payment was guaranteed by Christopher Green.
5 In the event the Agueda R. Robbie Marital Trust elected to assign
6 the balance due on the note in exchange for a 15% equity interest
7 in Blanco River, then plaintiff would not be entitled to repayment
8 of the sums due and owing under the promissory note unless and until
9 the defendant, Blanco River, obtained approval for a loan to
10 purchase the subject property and Blanco River closed the escrow on
11 the purchase of the property and was in a position to use loan
12 proceeds to repay the investment.
13    The parties have agreed that Arizona law applies to claims in
14 this case.  The general rules of contract interpretation under
15 Arizona law require that "the ordinary meaning of language be given
16 to words in a contract where circumstances do not show a different
17 meaning as applicable."  *Brady vs. Black Mountain Inv. Co.*, 105
18 Ariz. 87, 89 (1969)."A contract must be [reasonably] construed so
19 that every part is given effect, and each section of an agreement
20 must be read in relation to each other to bring harmony, if
21 possible, between all parts of the writing... As a corollary, the
22 court will not construe one provision in a contract so as to render
23 another provision meaningless." *Chandler Medical Bldg. Partners v.*
24 *Chandler Dental Group*, 855 P.2d 787, 791 (Ariz.App. 1993). Arizona
25 law requires the court to reasonably construe a contract "so as to
26 accomplish the intention of the parties." *Harris v. Harris*, 195
27 Ariz. 559, 562 (App. 1999).  This court previously determined that
28 the language contained in the promissory note was sufficiently

10

ambiguous to require a trial and to permit extrinsic evidence to be admitted on the question of the intent of the parties with respect to the disputed provisions in the promissory note.

A promissory note is a contract and is subject to Arizona's principles of contract interpretation. Under Arizona law a loan is not an equity or ownership interest. *United States vs. Evans*, 375 F.2d 730, 731 (9th Cir. 1967). In contrast, stock in a corporation "is an equity, and represents an ownership interest and it is to be distinguished from obligations such as notes or bonds which are not equities and represent no ownership interest. *Id*. The court concludes that an option to convert the note to an ownership interest does not alter the note's fundamental nature as an instrument evidencing indebtedness, and not ownership of a share of a company unless the option is exercised.

In the final analysis the court must apply a standard of reasonableness in contract interpretation. *Chandler Medical Bldg. Partners,* 855 p.2d at 791.

The court concludes that in order to give meaning to all of the provisions of the promissory note, the last sentence of the note is qualified by the other provisions of the last two paragraphs which require an assignment of the outstanding balance of the note before the close of escrow on June 15, 2006 in order for Eda Robbie to acquire an equity interest in Blanco River.

On May 22, 2006, Eda Robbie tendered the note to Blanco River in exchange for her obtaining an equity interest in Blanco River. At the trial, Eda Robbie testified that she had acquired an equity interest in Blanco River. This position is consistent with the investments of the other investors who became members of Blanco

River on or before June 10, 2006 by signing the operating agreement prior to the June 15, 2006 projected date for closing the escrow. Exhibits 15, 16 and 54 reflect Eda Robbie's intention to surrender the promissory note in exchange for a 15% equity interest in Blanco River.

Therefore the court finds and concludes that Eda Robbie assigned a portion of her interest in the promissory note to Blanco River on May 22, 2006. The portion of the note assigned was equal to a 10.437% interest in Blanco River. Once the plaintiff acquired an equity interest by assigning a portion of the note to Blanco River and acquired an equity ownership interest in Blanco River, she surrendered that portion of the note which represented the equity interest that she received in Blanco River. Thereafter, as to that portion of the note she assigned to Blanco River, she was entitled to receive a refund of her investment as were the other investors but only from the proceeds of Blanco River and not as an unsecured holder of a promissory note.

Eda Robbie's intent is further reflected by her execution of a K-1 tax form in which she took the position with the Internal Revenue Service that she had invested $250,000.00 in Blanco River and had become an equity member of Blanco River in exchange for all or a portion of the investment of the $250,000.00 and that she was therefore entitled to a $250,000.00 deduction from ordinary income on her tax return.

The court specifically finds that the closing, refinancing, sale or assignment of the Maker provision of the note was not a condition precedent to the defendants original obligation to repay the original note. Only following an assignment of the note and

12

exchange for the equity interest did closing of the escrow with sufficient funds to pay off the investors become a condition precedent to the obligation of Blanco River to repay what had been the outstanding balance due on the note.  Once that assignment had been made, the right to be repaid was dependent upon assets of Blanco River to make distribution provisions as set forth in paragraph 6.1 of the operating agreement.

While the court has concluded that plaintiff assigned a portion of her promissory note to Blanco River, this does not end the inquiry with respect to her entitlement to recover a portion of the promissory note as an unsecured creditor of Blanco River. Plaintiff was entitled to receive a 15% equity interest in Blanco River in exchange for her assignment of the full $250,000.00, represented by the promissory note, to Blanco River.  On June 13, 2006, when Eda Robbie sent the promissory note together with an executed operating agreement to Blanco River, Blanco River only agreed to provide Eda Robbie with a 10.437% equity interest in Blanco River.  The defendants Blanco River and Christopher Green consistently maintained that Eda Robbie was only entitled to a 10.437% equity interest in Blanco River in exchange for her interest under the promissory note and that the balance should be distributed to Eda Robbie's stepdaughter, Alison Ruday.  This position was a breach of the express terms of the promissory note.  On June 13, 2006, Eda Robbie had the option of advising Christopher Green and Blanco River that she was not going to assign all or any portion of her promissory note to Blanco River  because they had failed to provide for a 15% equity interest in Blanco River in compliance with the terms of the promissory note and had instead acknowledged her

13

entitlement to only a 10.437% interest.  She could have then commenced an action against the defendants on the note as an unsecured creditor.  She elected not to do so. Instead she tendered the promissory note along with her renewed request that her 15% equity interest be reflected in the operating agreement. Therefore, the court concludes that Eda Robbie assigned to Blanco River that portion of the promissory note which was equal to a 10.437% equity interest in Blanco River  and she acquired an equity ownership interest of 10.437% in Blanco River.  The court further finds and concludes that the assignment that Eda Robbie made of her promissory note on June 13, 2006 effectively assigned $173,950.00 of the $250,000.00 under the promissory note to Blanco River.  In order for her to be repaid the sum of $173,950.00, she, like all of the other investors, could only be repaid that sum from the new loan proceeds at the close of escrow.  Because the escrow failed to close and Blanco River  had no assets, all of the investors including plaintiff to the extent of her assignment of the promissory note, lost their investments.

The court expressly finds and concludes that the 4.563% equity interest that plaintiff was entitled to receive under the terms of the promissory note which plaintiff did not receive from the defendants is in the sum of $76,050.00.

The $76,050.00 represents the remaining 4.563% equity interest in Blanco River that Eda Robbie was entitled to receive and did not in accordance with the terms of the promissory note.

Therefore, the court finds and concludes that plaintiff is entitled to recover under the first claim for relief of the first amended complaint the sum of $76,050.00 against the defendant Blanco

14

River and Christopher Green, under his guarantee, as an unsecured creditor of Blanco River together with interest.

On the issue of interest, it is a general rule in federal diversity actions that state law determines the rate of prejudgment interest, but post-judgment interest is governed by federal law. 28 U.S.C. § 1961; *Citicorp Real Estate v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998). Under Arizona law, "prejudgment interest on a liquidated claim is a matter of right." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508 (1996)(en banc). Pursuant to A.R.S. § 44-1201(A), interest "shall be at the rate of ten percent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to." A.R.S. § 44-1201(A).

The court also finds and concludes that plaintiff pursuant to the assignment of a portion of the promissory note is entitled to a 10.437% equity interest in Blanco River.

Plaintiff also seeks to recover against defendants for a breach of the covenant of good faith and fair dealing under the second claim for relief. Under this claim, Eda Robbie contends that Christopher Green misappropriated over $400,000.00 from Blanco River as reflected in a judgment Blanco River obtained against Christopher Green in the District Court for the Southern District of Texas (Case No. 4:08-cv-02822, Tex. Doc. No. 1). Because this court has determined that plaintiff has a 10.437% ownership interest in Blanco River, she has a beneficial interest in that judgment equal to the amount of the ownership interest she has in Blanco River. As to this amount, the plaintiff is entitled to recover a pro-rata share of any recovery Blanco River makes against Christopher Green.

The court finds and concludes that plaintiff is not entitled

15

to any additional relief against Blanco River or Christopher Green on this claim.

Finally, plaintiff has failed to prove under her third claim for relief that Blanco River and Christopher Green had no intent to perform under the terms of the promissory note and therefore committed fraud.  While the court has found that the defendants breached their contract with plaintiff by only giving her with a 10.437% interest in Blanco River  instead of the promised 15%, neither defendant committed actionable fraud. The evidence showed that the balance of the 4.563% equity interest was reflected in the operating agreement as owned by Eda Robbie's stepdaughter, Alison Ruday.  Neither of the defendants made false representations to Eda Robbie to induce her to invest her trust money with the intent not to perform.  In addition, plaintiff has failed to prove that either defendant acted maliciously with an intent to cause injury to Eda Robbie.

Therefore based on the foregoing findings of fact and conclusions of law, judgment is entered as follows:

1. On plaintiff's first claim for relief, plaintiff is awarded judgment against the defendants Blanco River LLC and Christopher Green in the amount of $76,050.00 together with interest at the rate of twelve percent (12%) from April 4, 2006 until entry of judgment. Thereafter, the judgment shall bear interest at the statutory rate.

Further, plaintiff is entitled to a 10.437% interest in the defendant Blanco River LLC.

2.  On plaintiff's second and third claims for relief, the court enters judgment in favor of defendants Blanco River LLC and Christopher Green and against the plaintiff, Agueda R. Robbie,

16

Trustee of the Agueda R. Robbie Marital Trust,

3. The promissory note contains an attorney fee provision. Under the court's decision, plaintiff and defendants are prevailing parties under the note. Therefore, either party may file a motion for fees and costs pursuant to Local Rule 54-16. If no motion is filed, the judgment shall provide that each party shall bear their own costs and fees.

4. The Clerk of Court shall enter judgment accordingly.

Dated this 22nd day of July, 2011.

_____
Howard D. McKibben
U.S. Senior District Judge

17